966 A.2d 1036

DEG, LLC, PLAINTIFF–APPELLANT, v. TOWNSHIP OF FAIRFIELD AND ZONING OFFICER, GLENN PLUMSTEAD, IN HIS OFFICIAL CAPACITY, DEFENDANTS–RESPONDENTS.

Argued November 5, 2008—Decided March 25, 2009.

244

*Dennis J. Oury* argued the cause for appellant (*Mr. Oury*, attorney; *Sylvia Hall*, on the briefs).

*Bennett M. Stern* argued the cause for respondents (*Stern, Lavinthal, Frankenberg & Norgaard*, attorneys).

Justice LONG delivered the opinion of the Court.

This appeal arises out of a lawsuit filed by the owner of a sexually oriented business against a municipality whose zoning scheme precluded such uses in all zones. After a trial judge declared that the zoning ordinance was unconstitutional on its face and ordered the issuance of the appropriate permits, the business opened. Because the judge also determined that there was a "reasonable likelihood" that *N.J.S.A.* 2C:34–7 [1] would be declared unconstitutional as applied, she ordered further discovery and a

---

[1] *N.J.S.A.* 2C:34–7(a) prohibits any person from operating a sexually oriented business within 1,000 feet of any sexually oriented business, place of public worship, school, school bus stop, child care center, public playground, place of public recreation, hospital or residential zone, unless such a business is expressly permitted by municipal ordinance.

hearing on that issue. Thereafter, the township settled the as-applied challenge to *N.J.S.A.* 2C:34–7, permitting the business to continue to operate at its location and acknowledging its entitlement to a certificate of nonconforming use under *N.J.S.A.* 40:55D–68 in the event of the enactment of a new zoning ordinance that rendered the use invalid. Subsequently, the township enacted two new zoning ordinances allowing sexually oriented uses in other zones. The township then refused to issue a certificate of nonconforming use. The business owner sought to enforce the settlement, and the township defended by applying for relief from the consent judgment under *Rule* 4:50–1 on the grounds of: (a)—mistake, (b)—newly discovered evidence, (d)—the judgment was void, and (f)—the catch-all. The trial judge enforced the settlement.

The Appellate Division reversed based on *Rule* 4:50–1(e), which allows relief from a judgment where "it is no longer equitable that the judgment ... should have prospective application," and remanded for the development of a record on that issue. In particular, the panel relied on the township's enactment of the new zoning ordinances as a "significant change in law" that implicated *Rule* 4:50–1(e) and warranted a hearing regarding whether enforcement of the consent judgment would be "equitable" in light of that change. The panel also declared that the consent judgment was violative of the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –163. We now reverse on both grounds.

I.

On June 28, 2005, DEG, LLC ("DEG") leased a commercial property located at 276 Route 46 East in the Township of Fairfield for a five-year period. DEG leased the property with the intent of operating a sexually oriented business. At the time DEG entered into the lease, Fairfield's zoning ordinances prohibited sexually oriented uses in any zone.

On July 8, 2005, prior to opening, DEG filed an application for a permit to operate. In the application, DEG indicated that the

proposed use was nonconforming because section 45:12.1 of Fairfield's zoning laws prohibited sexually oriented uses "in all zones in the Township." To support its request for a permit, DEG noted on the application that the ordinance prohibiting all sexually oriented uses was unconstitutional. Fairfield's zoning official denied DEG's application based on the preclusive zoning ordinance.

Around that same time, DEG retained Jason Kasler, a planning expert, to conduct an analysis of the alternative avenues of communication, that is, where in the relevant market area DEG could legally operate its business. In preparing his report, Kasler accounted for the restrictions imposed by *N.J.S.A.* 2C:34–7 and local zoning ordinances. Kasler used a relevant market area that encompassed thirty-three municipalities, which, when combined, spanned 233.87 square miles and contained 742,306 people. In his report, dated August 11, 2005, Kasler concluded that there were no locations in a number of towns, including Fairfield, for DEG to operate as a result of preclusive zoning ordinances. As for the remaining municipalities, he opined there "is zero percent of the market area available for sexually oriented uses" based on local ordinances and *N.J.S.A.* 2C:34–7.

On August 30, 2005, DEG filed a complaint and an order to show cause seeking temporary restraints against Fairfield and its zoning official. The complaint alleged that the Fairfield zoning ordinance and *N.J.S.A.* 2C:34–7 were unconstitutional; that the denial of a permit constituted an invalid prior restraint on DEG's first amendment rights; and that Fairfield violated 42 *U.S.C.* § 1983. In response, Fairfield argued that DEG was not entitled to temporary relief.

After a hearing, the trial judge issued an opinion on November 4, 2005, which declared that the zoning ordinance prohibiting sexually oriented businesses anywhere in Fairfield was "unconstitutional on its face" because it was content-based and did not provide an alternate means of communication.[2] The judge also

---

[2] Fairfield has conceded that point.

held, based on the record presented in the application for temporary restraints, that DEG "established a reasonable likelihood of proving that *N.J.S.A.* 2C:34–7, if applied to this location, would violate the First Amendment." In addition, the judge determined that "at this juncture, the public interest in the uninhibited exercise of free speech outweighs any interest the State or [Fairfield] may have in preventing DEG from opening its adult business." She thus ordered Fairfield to issue DEG the necessary permits to operate, despite the pendency of the challenge to *N.J.S.A.* 2C:34–7. Because Fairfield questioned the "factual assumptions" underlying Kasler's report and expressed an intention to retain experts to counter Kasler's conclusions regarding *N.J.S.A.* 2C:34–7, the trial judge set a schedule for discovery and a plenary hearing on the constitutionality of the statute as applied. DEG notified the Attorney General of the pendency of the litigation pursuant to *Rule* 4:28–4(a)(1). The Attorney General chose not to intervene. In a later communication, she explained that the case lacked statewide importance and that in such cases the matter is left in the hands of local officials.

The parties began settlement negotiations immediately following the hearing on DEG's order to show cause. In the meantime, on January 27, 2006, DEG opened its doors to the public as the Essex Adult Emporium. At that time, its business complied with the zoning laws of Fairfield. As part of the settlement process, Kasler prepared a second report regarding the 1,000–foot buffer requirement contained in *N.J.S.A.* 2C:34–7. He concluded that DEG's business violated that statute because it was located within 1,000 feet of at least one residential zone.

After months of negotiations, the parties agreed to settle the challenge to *N.J.S.A.* 2C:34–7. Fairfield's township council unanimously approved the settlement by resolution on June 12, 2006, and the consent judgment was signed by the trial judge and filed on July 20, 2006. The consent judgment permitted DEG to continue to operate its business at the leased location. Paragraph two of the consent judgment stated:

2. In the event that [Fairfield] adopts a future ordinance permitting the sale of adult-oriented products in a zone other than the zone within which DEG is permitted to operate the Store, pursuant to *N.J.S.A.* 40:55D–68, DEG shall apply for, and [Fairfield's] Zoning Official *shall issue* to DEG within ten (10) days, a Certificate of Non–Conformity for the Store. In all respects, DEG shall apply for said Certificate in conformance with said statute, with this Judgment evidencing the permissibility of DEG's use, as a pre-existing non-conforming use in the zone in which it is located.

[ (Emphasis added).]

The remainder of the consent judgment detailed various restrictions on signage and displays, declared that each party would be responsible for its counsel fees, and stated that it "shall not be construed as an ordinance adopted pursuant to *N.J.S.A.* 2C:34–2 as referenced in *N.J.S.A.* 2C:34–7(a)."

Also on June 12, 2006, Fairfield introduced Ordinance 2006–16 that permitted sexually oriented businesses to operate only in a newly created C–3 zone that did not include DEG's location. Two weeks later, on June 26, 2006, that ordinance went into effect.[3]

On March 22, 2007, DEG applied for a certificate of nonconforming use based on the enactment of Ordinance 2006–16. Fairfield denied the request. In the meantime, Fairfield retained special counsel to challenge the consent judgment. According to a letter written by the Mayor of Fairfield on August 31, 2006, the reason behind that decision was that Fairfield

might not have pursued the 2C:34–7 statute aggressively or completely enough through the county or state . . . .

If, for whatever reason, the governing body misjudged this situation and made a wrong decision, I can assure you we will do what we can to correct it and have 2C:34–7 enforced against the Essex Adult Emporium if it applies.

To that end, in February 2007—fourteen months after the case management order gave Fairfield the opportunity to hire an expert, thirteen months after DEG opened its doors to the public, and eight months after Fairfield agreed to the entry of a consent

---

[3] Although the consent judgment was not signed by the trial judge until July 20, 2006, and Fairfield initially suggested that the ordinance was thus pre-settlement and not within the contemplation of paragraph two of the consent judgment, that issue has since been abandoned.

judgment that permitted DEG to continue operating at its location—Fairfield finally hired its own planning expert, Joseph Burgis. His charter was to review Kasler's reports and determine whether there were any locations in Fairfield where a sexually oriented business could operate without violating *N.J.S.A.* 2C:34–7. At the heart of Burgis's April 2007 certification was his conclusion that Kasler incorrectly found that there were no locations within Fairfield where DEG could legally operate its business. Burgis certified that:

> [T]he Kasler conclusions that stated that there was no location not in violation of [*N.J.S.A.* 2C:34–7] within [Fairfield] are in error and ... in fact, there are multiple locations within [Fairfield] upon which similar facilities, in general, and DEG's business specifically, can be located and which locations are not in violation of *N.J.S.A.* 2C:34–7.
>
> Annexed hereto, made a part hereof and marked Exhibit B is a true copy of Zoning Ordinance No. 2007–06 which was adopted on April 23, 2007 by the [Fairfield] Township Council, and which Ordinance has annexed thereto a list of properties which identify by tax block and lot those several properties in [Fairfield] upon which the DEG (or similar) business can be located, and not be in violation of [*N.J.S.A.* 2C:34–7].

Burgis also reached a different conclusion from Kasler regarding DEG's proximity to a day care center and some bus stops.

The dispute came to a head on April 11, 2007, when DEG filed a motion in aid of litigant's rights requesting that the trial judge order Fairfield to issue it a certificate of nonconforming use in compliance with the consent judgment. The motion also sought to recover attorney's fees and costs pursuant to *Rule* 1:10–3. Fairfield responded with a cross-motion pursuant to *Rule* 4:50–1(a), (b), (d), and (f), seeking relief from the consent judgment.

In a written opinion dated May 30, 2007, the trial judge granted DEG's motion and denied Fairfield's cross-motion. She addressed each of Fairfield's grounds for relief under the rule: mistake; newly discovered evidence; "the judgment or order is void"; and "any other reason justifying relief from the operation of the judgment or order." *R.* 4:50–1(a), (b), (d), (f).

The judge held that Kasler's alleged mistake (that there were no available lots in Fairfield on which adult uses were legal, when

there were forty such lots) was not a mistake at all because different ordinances were in effect at the time Kasler and Burgis wrote their reports. Next, she opined that the Burgis certification could have been obtained during the earlier litigation, and thus did not constitute newly discovered evidence. Additionally, the judge held that the new ordinances did not void the November 4, 2005 order. Instead, she declared that paragraph two of the consent judgment, which specifically anticipated the enactment of the new ordinances, was valid and controlling, requiring Fairfield to "grandfather" DEG into its current location. Finally, because the consent judgment accounted for the passage of future ordinances and Fairfield made no allegation of fraud, the judge ruled that there was no basis to "warrant disruption of the Judgment under *R.* 4:50–1(f)." She therefore enjoined Fairfield from enforcing the new ordinance against DEG and required it to provide DEG with a certificate of nonconforming use.

Fairfield appealed and the appellate panel granted a stay of that portion of the order that required it to provide DEG with a certificate of nonconforming use, but permitted DEG to remain in business on the premises.

In a unanimous opinion, the Appellate Division declared that Fairfield had the authority to settle the constitutional challenge to *N.J.S.A.* 2C:34–7 and affirmed the trial judge's rulings that Fairfield was not entitled to relief under *Rule* 4:50–1(a), (b), and (d). *DEG, LLC v. Twp. of Fairfield,* 398 *N.J.Super.* 59, 68–72, 939 *A.*2d 261 (App.Div.2008).

In respect of *Rule* 4:50–1(a), the Appellate Division determined that there was no "mistake" entitling Fairfield to relief because the question of whether there were other locations in Fairfield on which a sexually oriented business could operate without violating *N.J.S.A.* 2C:34–7 "is not a simple question of fact but rather a matter of expert opinion. A mere difference of expert opinion cannot establish a mistake of fact that could justify relief under *Rule* 4:50–1(a)." *Id.* at 72, 939 *A.*2d 261. Moreover, echoing the trial judge, the panel held that the difference between the Kasler

and Burgis reports was "only as a result of the adoption, subsequent to the settlement of this litigation, of ordinances that established zoning districts where such businesses are now permitted." *Ibid.*

The panel also rejected Fairfield's newly-discovered-evidence claim under *Rule* 4:50–1(b) because Fairfield made the decision to settle the case without retaining an expert, a state of affairs that did not "satisfy the 'due diligence' requirement of [the rule]." *Id.* at 71, 939 *A*.2d 261.

Further, the panel rejected Fairfield's claim that the consent judgment was void because there had been no declaration that *N.J.S.A.* 2C:34–7 was unconstitutional as applied:

> A governmental body against which such litigation is brought may conclude, as in any other type of case, that the prospects of successfully defending the statute's constitutionality are unfavorable and therefore the costs of such a defense are not justifiable. In this case, for example, the trial court stated, in granting DEG's application for temporary restraints, that DEG had "established a reasonable likelihood of proving that *N.J.S.A.* 2C:34–7, if applied to [the site of its proposed sexually-oriented business], would violate the First Amendment[.]" Moreover, Fairfield was undoubtedly advised that a defense of *N.J.S.A.* 2C:34–7 as applied to DEG's proposed business would require the retention of an expert to determine the availability of "adequate alternative channels of communication within the relevant market area." Fairfield also could reasonably have concluded that, by agreeing to settle DEG's challenge to the constitutionality of *N.J.S.A.* 2C:34–7, it could obtain DEG's consent to restrictions upon its business operations that the trial court might not impose if the case were fully litigated and DEG prevailed.
>
> [*Id.* at 70, 939 *A*.2d 261 (alterations in original) (citations omitted).]

However, the panel went on to hold that "Fairfield's adoption of zoning ordinances that permit sexually[ ]oriented businesses in two zoning districts constitutes a significant change in law that may provide a basis for relief under *Rule* 4:50–1(e)." *Id.* at 73, 939 *A*.2d 261. On that basis, the panel ordered a plenary hearing to determine whether, as a consequence of the adoption of the new ordinances, "there was no substantial question regarding the constitutionality of *N.J.S.A.* 2C:34–7 as applied to [DEG]'s business or that *N.J.S.A.* 2C:34–7 may be constitutionally applied." *Id.* at 74, 939 *A*.2d 261. In light of that ruling, the panel found it unnecessary to address Fairfield's claim under *Rule* 4:50–1(f). *Id.*

at 75, 939 *A.*2d 261. In addition, the panel declared that paragraph two of the consent judgment violated the MLUL. *Ibid.* We granted DEG's petition for certification. 195 *N.J.* 421, 949 *A.*2d 850 (2008).

## II.

DEG argues that *Rule* 4:50–1(e) does not provide a basis for relief from the consent judgment; that all of what occurred in the case was anticipated and provided for in the consent judgment; that a party cannot obtain relief from a judgment because of its own volitional actions; that granting Fairfield relief from the consent judgment would violate the Ex Post Facto and Contracts Clauses of the United States and New Jersey Constitutions; and that the MLUL was not contravened by paragraph two of the consent judgment.

Fairfield counters that the Appellate Division correctly granted "equitable" relief under *Rule* 4:50–1(e); that it settled the case as a result of a "mistake";[4] that the consent judgment was void because it allowed DEG to commit a crime; that paragraph two of the consent judgment violated the MLUL; and that no Ex Post Facto or Contracts Clause claims exist in the case.

## III.

The parties do not dispute that DEG's sexually oriented business constitutes expression protected under the First Amend-

---

[4] There has been much confusion over that issue. The trial judge and the Appellate Division believed, based on the arguments advanced before them, that the forty lots only became available as a result of the later enactment of the April 2007 ordinance. If that was a misimpression, Fairfield never corrected it in either of those courts. Before us, Fairfield contended that Kasler's conclusion was a "mistake" because, according to its expert, there were, in fact, forty non-offending lots under the ordinances in effect at the time of DEG's original challenge. Although the record remains opaque on that subject, we will accept Fairfield's claim for the purpose of this opinion because it does not affect our analysis.

ment to the United States Constitution, *U.S. Const.* amend. I, and under Article I, Paragraph 6 of the New Jersey Constitution, *N.J. Const.* art. I, ¶ 6. In the context of restrictions on sexually oriented businesses, we have interpreted our free speech provision to be coterminous with federal protections. *Twp. of Pennsauken v. Schad,* 160 *N.J.* 156, 176, 733 *A.*2d 1159 (1999). Under the Federal Constitution, the content-based regulation of expression is presumptively invalid and subject to strict scrutiny. *United States v. Playboy Entm't Group, Inc.,* 529 *U.S.* 803, 814, 120 *S.Ct.* 1878, 1886, 146 *L.Ed.*2d 865, 880 (2000); *R.A.V. v. City of St. Paul,* 505 *U.S.* 377, 382, 112 *S.Ct.* 2538, 2542, 120 *L.Ed.*2d 305, 317 (1992).

However, regulations intended to govern the secondary effects that particular businesses may have on the surrounding community are permissible so long as those restrictions are limited to time, place, and manner; are content neutral; are designed to serve a substantial government interest; and allow for reasonable alternative avenues of communication. *City of Renton v. Playtime Theatres, Inc.,* 475 *U.S.* 41, 47–48, 106 *S.Ct.* 925, 928–29, 89 *L.Ed.*2d 29, 37–38 (1986). What constitutes reasonable alternative avenues of communication depends on the facts and circumstances of the case. The analysis is a complex and detailed one that we have denominated as "formidable." *Twp. of Saddle Brook v. A.B. Family Ctr., Inc.,* 156 *N.J.* 587, 596, 722 *A.*2d 530 (1999). It is a regional inquiry, *id.* at 597, 722 *A.*2d 530, and entails, among other things, expert assessments of the size of the relevant market; the absolute number of available locations; the relative number of such locations to land mass; the ratio of locations to population; and the qualitative availability of particular properties in light of their own unique characteristics, *id.* at 594–97, 722 *A.*2d 530 (citing federal cases analyzing reasonable alternative avenues of communication proffered by regulating body). Merely identifying some properties on which sexually oriented uses are permitted is only the first step in a complicated and fact-sensitive analysis. In connection with that inquiry, in *A.B. Family Center, supra,* we

affirmed, on fairness grounds, that the municipality should bear the burden of proof because of its election to "restrict protected speech." 156 *N.J.* at 598, 722 *A.*2d 530 (citing *Schad v. Borough of Mount Ephraim*, 452 *U.S.* 61, 74, 101 *S.Ct.* 2176, 2186, 68 *L.Ed.*2d 671, 684 (1981)).

That is the backdrop on which Fairfield's settlement of DEG's constitutional claim must be evaluated.

## IV.

■ We turn first to the Appellate Division's ruling that Fairfield has the authority to settle an as-applied constitutional challenge. Although there is no reported decision directly on point, no party has argued against that unremarkable proposition and the Attorney General, after having been notified of the pendency of DEG's action, as required under *Rule* 4:28–4(a)(1), permitted Fairfield to settle the challenge to *N.J.S.A.* 2C:34–7.

■ It makes sense that a governmental entity may settle litigation challenging the constitutionality of a statute as applied where it assesses the claim to be a substantial one. Indeed, our courts have long encouraged the settlement of litigation, *Puder v. Buechel*, 183 *N.J.* 428, 437–38, 874 *A.*2d 534 (2005), because it permits litigants to resolve disputes on mutually acceptable terms in place of risking exposure to an adverse judgment, *Morris County Fair Hous. Council v. Boonton Twp.*, 197 *N.J.Super.* 359, 366, 484 *A.*2d 1302 (Law Div.1984), *aff'd o.b.*, 209 *N.J.Super.* 108, 506 *A.*2d 1284 (App.Div.1986).

"Settlements also save parties litigation expenses and facilitate the administration of the courts by conserving judicial resources." *Ibid.* Those benefits should be as available to public entities as they are to private parties. Put another way, a municipality should not be required to incur the financial and other costs attendant upon the defense of a constitutional claim where it reasonably assesses that claim as a substantial one and where it

could negotiate concessions that might not be awarded after lengthy and expensive litigation.

In this case, we are satisfied, as was the Appellate Division, that at the time of the settlement, Fairfield reasonably assessed DEG's claim regarding the as-applied constitutionality of *N.J.S.A.* 2C:34–7 as a substantial one. Indeed, the trial judge had already held, on the record before her, that DEG "established a reasonable likelihood of proving that *N.J.S.A.* 2C:34–7, if applied to this location, would violate the First Amendment." At that point, it was Fairfield's burden to prove that the available lots in the relevant market area constituted adequate alternative avenues of communication. That, in turn, would have involved the retention of experts to opine on all of the factors enumerated in *A.B. Family Center* as necessary elements of a full trial on the merits. *Supra* at 258, 966 *A.2d* at 1045. In our view, Fairfield had the authority to forgo attempting to meet that "formidable" burden in favor of a negotiated settlement. In short, we discern no theoretical stumbling block to the settlement of this challenge to the constitutionality of *N.J.S.A.* 2C:34–7 as applied to DEG's sexually oriented business.

## V.

We thus proceed from the premise that there was no legal impediment to the settlement between Fairfield and DEG that resulted in the consent judgment. It is from that consent judgment that Fairfield seeks relief under *Rule* 4:50–1. *Rule* 4:50–1, which is nearly identical to *Federal Rule of Civil Procedure* 60(b), provides in relevant part that:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; ... (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer

equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

■ Although courts are empowered to confer absolution from judgments, "[r]elief [under this rule] is granted sparingly." *F.B. v. A.L.G.*, 176 *N.J.* 201, 207, 821 *A.*2d 1157 (2003) (citing Pressler, *Current N.J. Court Rules,* comment 1.1 on *R.* 4:50–1 (2003)). On appellate review, the trial judge's determination "will be left undisturbed unless it represents a clear abuse of discretion." *Hous. Auth. of Morristown v. Little,* 135 *N.J.* 274, 283, 639 *A.*2d 286 (1994) (citing *Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n,* 132 *N.J.* 330, 334, 625 *A.*2d 484 (1993)).

■ The rule does not distinguish between consent judgments and those issued after trial. So long as the judgment is final, the rule is applicable. Indeed, a consent judgment "is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of the Suffolk County Jail,* 502 *U.S.* 367, 378, 112 *S.Ct.* 748, 757, 116 *L.Ed.*2d 867, 883 (1992) (citing *Sys. Fed'n No. 91, Ry. Employees' Dep't v. Wright,* 364 *U.S.* 642, 650–51, 81 *S.Ct.* 368, 373, 5 *L.Ed.*2d 349, 355 (1961)); *see also Cmty. Realty Mgmt., Inc. v. Harris,* 155 *N.J.* 212, 226, 714 *A.*2d 282 (1998) (consent judgments are " 'an agreement of the parties under the sanction of the court as to what the decision shall be' " (quoting *Stonehurst at Freehold, Section One, Inc. v. Twp. Comm. of Freehold,* 139 *N.J.Super.* 311, 313, 353 *A.*2d 560 (Law Div.1976))).

■ Significantly, *Rule* 4:50–1 is not an opportunity for parties to a consent judgment to change their minds; nor is it a pathway to reopen litigation because a party either views his settlement as less advantageous than it had previously appeared, or rethinks the effectiveness of his original legal strategy. Rather, the rule is a carefully crafted vehicle intended to underscore the need for repose while achieving a just result. It thus denominates with specificity the narrow band of triggering events that will warrant relief from judgment if justice is to be served. Only

the existence of one of those triggers will allow a party to challenge the substance of the judgment.

Here, the trial judge rejected the claims Fairfield had advanced under *Rule* 4:50–1(a), (b), and (d), and the Appellate Division agreed with her analysis. *DEG, supra,* 398 *N.J.Super.* at 68–72, 939 *A.*2d 261. The Appellate Division nevertheless afforded Fairfield relief under *Rule* 4:50–1(e), determining that by the enactment of the new ordinances, Fairfield had satisfied the predicate for relief under that subsection. *Id.* at 73, 939 *A.*2d 261. It is only in connection with that holding that we granted DEG's petition for certification. Although Fairfield did not file a cross-petition, it continued to weave other parts of *Rule* 4:50–1 into its arguments before this Court. For that reason, and for the sake of completeness, we will address all relevant aspects of the rule.

*Rule* 4:50–1(a)

*Rule* 4:50–1(a) provides relief when a judgment has been entered as a result of "mistake, inadvertence, surprise, or excusable neglect." The four identified categories in subsection (a), when read together, as they must be, reveal an intent by the drafters to encompass situations in which a party, through no fault of its own, has engaged in erroneous conduct or reached a mistaken judgment on a material point at issue in the litigation. Fairfield argues that it was misled by Kasler's report that concluded that there were no locations in Fairfield in which DEG could operate its business without violating *N.J.S.A.* 2C:34–7. According to Fairfield, there were, in fact, forty such locations available at the time of the settlement, and more violations of *N.J.S.A.* 2C:34–7 than Kasler's second report indicated.

There are many problems with those claims. Initially, it is not at all clear that there were factual errors in Kasler's reports. Indeed, as the Appellate Division properly noted, a difference of expert opinion is not a mistake at all. *DEG, supra,* 398 *N.J.Super.* at 72, 939 *A.*2d 261. More importantly, from the very outset of the case, Fairfield questioned the "factual assumptions" in Kasler's report, and sought the opportunity to produce its own

experts to challenge Kasler at a plenary hearing. As a result of Fairfield's claims, the judge set up a discovery schedule in anticipation of a trial on the merits. In short, the very notion that Fairfield was "misled" by Kasler's report is belied by the record. In essence, Fairfield argues that its strategic choice to forgo an expert, despite its expressed doubts over the factual assumptions in Kasler's report, was a mistake entitling it to relief from the consent judgment. We disagree.

 Those are not the kinds of "mistakes" contemplated by *Rule* 4:50–1(a), which is intended to provide relief from litigation errors "that a party could not have protected against." *Cashner v. Freedom Stores, Inc.*, 98 *F.*3d 572, 577 (10th Cir.1996) (citing *Thompson v. Kerr–McGee Ref. Corp.*, 660 *F.*2d 1380, 1384–85 (10th Cir.1981)). As Judge, now Justice, Wallace explained in commenting on *Rule* 4:50–1(a): "Plaintiff also argues that because his counsel mistakenly failed to present the appropriate expert testimony at trial, he should be granted relief. However, an attorney's error of law is not sufficient to relieve a party from a final judgment or order." *Posta v. Chung–Loy*, 306 *N.J.Super.* 182, 206, 703 *A.*2d 368 (App.Div.1997) (citing *Hendricks v. A.J. Ross Co.*, 232 *N.J.Super.* 243, 248–49, 556 *A.*2d 1267 (App.Div.1989)), *certif. denied*, 154 *N.J.* 609, 713 *A.*2d 500 (1998); *see also Hendricks, supra*, 232 *N.J.Super.* at 248–49, 556 *A.*2d 1267 (noting counsel's failure to assert particular claim in litigation is not mistake under *Rule* 4:50–1(a)); *Latshaw v. Trainer Wortham & Co., Inc.*, 452 *F.*3d 1097, 1099 (9th Cir.2006) ("*Rule* 60(b) is not intended to remedy the effects of a deliberate and independent litigation decision that a party later comes to regret through second thoughts or subsequently[ ]gained knowledge that corrects prior erroneous legal advice of counsel."); *Yapp v. Excel Corp.*, 186 *F.*3d 1222, 1231 (10th Cir.1999) ("[A] party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later, once the lesson is learned, turn back the clock to undo those mistakes." (citing *Cashner, supra*, 98 *F.*3d at 577)); *Nemaizer v. Baker*, 793 *F.*2d 58, 62 (2d Cir.1986) ("Mere

dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify *Rule* 60(b)(1) relief." (citing *United States v. O'Neil,* 709 *F.*2d 361, 373 (5th Cir.1983))). Indeed, a contrary ruling would result in the anomalous situation of placing every settlement in legal limbo. In short, the Appellate Division was on firm ground in declaring that subsection (a) was unavailable to Fairfield.

### *Rule* 4:50–1(b)

Fairfield is equally wide of the mark in its reliance on subsection (b). To obtain relief from a judgment based on newly discovered evidence, the party seeking relief must demonstrate "that the evidence would probably have changed the result, that it was unobtainable by the exercise of due diligence for use at the trial, and that the evidence was not merely cumulative." *Quick Chek Food Stores v. Twp. of Springfield,* 83 *N.J.* 438, 445, 416 *A.*2d 840 (1980) (citing *State v. Speare,* 86 *N.J.Super.* 565, 581–82, 207 *A.*2d 552 (App.Div.), *certif. denied,* 45 *N.J.* 589, 214 *A.*2d 28 (1965)). All three requirements must be met. *See ibid.* Moreover, "newly discovered evidence" does not include an attempt to remedy a belated realization of the inaccuracy of an adversary's proofs. *Posta, supra,* 306 *N.J.Super.* at 206, 703 *A.*2d 368. This record is devoid of anything that would suggest that what is now relied on by Fairfield was, in fact, unobtainable pre-judgment. Indeed, the documents available in the record appear to suggest the opposite. Specifically, the case management order, dated December 12, 2005, provided Fairfield with time to retain a planning expert of its own. Furthermore, at oral argument before us, Fairfield admitted that there was nothing that prevented it from obtaining the Burgis evidence earlier. Accordingly, its own admissions regarding due diligence preclude the grant of relief from the consent judgment on a claim of newly discovered evidence.

### Rule 4:50–1(d)

██ *Rule* 4:50–1(d) provides relief from a judgment that is void. Fairfield argues here that the consent judgment was void because it allowed DEG to commit an "illegal" act in violation of *N.J.S.A.* 2C:34–7 by locating its business within the 1,000–foot buffer zone. The Appellate Division was not persuaded by the argument, nor are we.

When it passed *N.J.S.A.* 2C:34–7, the Legislature did not outlaw sexually oriented businesses, but permitted them so long as they are located more than 1,000 feet from certain uses, e.g., schools, churches, and residential zones. Further, it specifically preserved municipal authority to allow such uses within that buffer zone. *N.J.S.A.* 2C:34–7(a). "Nothing contained [in *N.J.S.A.* 2C:34–2] or [in *N.J.S.A.* 2C:34–7] shall be construed to prohibit a municipality from adopting as a part of its zoning ordinances an ordinance permitting the sale, distribution, rental or exhibition of obscene material in which event such sale, distribution, rental or exhibition shall be deemed legal." *N.J.S.A.* 2C:34–2(b). The obvious purpose of that exception was to insulate *N.J.S.A.* 2C:34–7 from constitutional attack in municipalities in which the statute would have had the effect of barring sexually oriented uses altogether. In arguing that the consent judgment, which allowed DEG to operate, permitted it to commit an illegal act, Fairfield reveals a fundamental misconception about that statutory scheme. When a municipality invokes *N.J.S.A.* 2C:34–2(b), it does not permit the "illegal" location of a sexually oriented business, but renders the location "legal." *Ibid.* Thus, there is no warrant for relief under subsection (d).

### Rule 4:50–1(e)

*Rule* 4:50–1(e) provides for relief from judgment where "the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application." In essence, the rule is rooted in changed circumstances that call the fairness

of the judgment into question. The first two clauses are relatively straightforward and detail satisfaction, release, discharge, or the invalidation of an underlying judgment as qualifying changes. They have no applicability here. It is the final clause on which the Appellate Division relied—that it is no longer equitable that the judgment should be enforced.

In ascertaining the meaning of that clause, we have looked to federal jurisprudence because of the similarities between *Rule* 4:50–1 and *Federal Rule of Civil Procedure* 60(b).[5] *Hodgson v. Applegate,* 31 *N.J.* 29, 34–35, 155 *A.*2d 97 (1959) (discussing prior *R.R.* 4:62–2, which used language identical to *Rule* 4:50–1). "It is therefore proper to draw on the experience of the federal courts with that rule to aid in the solution of comparable problems that arise under our rule." *Id.* at 35, 155 *A.*2d 97. Accordingly, we have relied on federal precedent in enunciating a stringent standard: a motion under subsection (e) "must be supported by evidence of changed circumstances," *Little, supra,* 135 *N.J.* at 285, 639 *A.*2d 286 (citing *United States v. Swift & Co.,* 286 *U.S.* 106, 114–15, 52 *S.Ct.* 460, 462, 76 *L.Ed.* 999, 1005–06 (1932)), and "[t]he party seeking relief bears the burden of proving that events have occurred subsequent to the entry of a judgment that, absent the relief requested, will result in *'extreme' and 'unexpected' hardship,"* *ibid.* (emphasis added) (quoting *Mayberry v. Maroney,* 558 *F.*2d 1159, 1163 (3d Cir.1977)).

Around the time that we handed down our decision in *Little,* the United States Supreme Court began developing a new line of case law governing the interpretation of *Federal Rule of Civil Procedure* 60(b)(5) in prison and school reform litigation, in part reflecting the upsurge in such litigation and the substantial periods of time during which those consent decrees tend to remain in effect.

---

[5] The federal counterpart to *Rule* 4:50–1(e), *Federal Rule of Civil Procedure* 60(b)(5), states that relief from a judgment will issue if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable."

*Rufo, supra,* 502 *U.S.* at 380, 112 *S.Ct.* at 758, 116 *L.Ed.*2d at 884. In charting that new path, the United States Supreme Court moved towards a more flexible standard that does not require the additional showing of grievous hardship evoked by new and unforeseen conditions. *Id.* at 379–80, 112 *S.Ct.* at 757–58, 116 *L.Ed.*2d at 883–84; *Bd. of Educ. of Okla. City Pub. Sch. v. Dowell,* 498 *U.S.* 237, 246–48, 111 *S.Ct.* 630, 636–37, 112 *L.Ed.*2d 715, 727–28 (1991). The Court in *Rufo, supra,* cautioned, however, that that approach does not authorize modification in every instance. 502 *U.S.* at 383, 112 *S.Ct.* at 760, 116 *L.Ed.*2d at 886. "A party seeking modification of a consent decree may meet its initial burden by showing a significant change either in factual conditions or in law." *Id.* at 384, 112 *S.Ct.* at 760, 116 *L.Ed.*2d at 886. The Court also noted that a modification is not warranted just because "it is no longer convenient to live with the terms of a consent decree." *Id.* at 383, 112 *S.Ct.* at 760, 116 *L.Ed.*2d at 886.

Importantly, *Rufo, supra,* established that "[o]rdinarily, ... modification *should not* be granted where a party relies upon events that *actually* were anticipated at the time it entered into a decree." 502 *U.S.* at 385, 112 *S.Ct.* at 760, 116 *L.Ed.*2d at 887 (emphasis added) (citing *Twelve John Does v. District of Columbia,* 861 *F.*2d 295, 298–99 (D.C.Cir.1988)). In such an instance, a party seeking relief from a consent decree "would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking." *Id.* at 385, 112 *S.Ct.* at 761, 116 *L.Ed.*2d at 887.

Although there is a debate among the circuits over whether the flexible rule of *Rufo* applies to all litigation or only to "institutional reform litigation," [6] the Appellate Division in this case adopted

---

[6] *Bellevue Manor Assocs. v. United States,* 165 *F.*3d 1249, 1255 (9th Cir.1999) (holding that *Rufo* applies to all judgments); *United States v. W. Elec. Co.,* 46 *F.*3d 1198, 1203 (D.C.Cir.1995) (same); *Alexis Lichine & Cie. v. Sacha A. Lichine Estate Selections, Ltd.,* 45 *F.*3d 582, 586 (1st Cir.1995) (same); *Bldg. & Constr. Trades Council v. NLRB,* 64 *F.*3d 880, 886–88 (3d Cir.1995) (same); *Hendrix v.*

that standard. We need not resolve the issue here because Fairfield cannot succeed on a *Rule* 4:50–1(e) modification under either standard.

The Appellate Division identified Fairfield's enactment of new zoning ordinances allowing sexually oriented uses in the municipality as a significant change in the law warranting application of *Rule* 4:50–1(e). *DEG, supra,* 398 *N.J.Super.* at 73, 939 *A.*2d 261. It is here that we part company from the panel. If the ordinances are the trigger, the traditional *Little* standard—that events have occurred subsequent to the judgment which, absent relief, would cause extreme and *unexpected* hardship—certainly cannot be satisfied. Everything that occurred in this case was fully anticipated and bargained for, including the enactment of new zoning ordinances and the grandfathering of DEG. Indeed, the situation is exactly what the parties foresaw—no "hardship" has occurred at all, let alone an "extreme" and "unexpected" one that would satisfy *Little.*

The same result is true under *Rufo,* which as we have said, holds that relief from judgment should ordinarily not be granted where the so-called changed circumstances were actually anticipated. In such a case, a party seeking relief has the "heavy" burden of establishing that it agreed to the decree in good faith *and* that it made a reasonable effort to comply with the judgment. *Rufo, supra,* 502 *U.S.* at 385, 112 *S.Ct.* at 760, 116 *L.Ed.*2d at 887 (citing *Twelve John Does, supra,* 861 *F.*2d at 298–99). Fairfield cannot satisfy that standard: the parties specifically anticipated that a new zoning ordinance would be enacted and, in that event, that DEG's business would be grandfathered. The burden of the judgment is exactly what was bargained for; it has not become more onerous as a result of changed circumstances; and nothing

*Page,* 986 *F.*2d 195, 198 (7th Cir.1993) (same); *contra Lorain NAACP v. Lorain Bd. of Educ.,* 979 *F.*2d 1141, 1149 (6th Cir.1992) (limiting *Rufo* to "institutional reform cases"); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.,* 977 *F.*2d 558, 562 (Fed.Cir.1992) (same).

unforeseen has happened, only the deliberate actions of Fairfield to avoid its agreement. Further, Fairfield made *no* effort whatsoever to comply with the consent judgment, let alone a good faith effort to do so. Thus, even under the more flexible standard of *Rufo*, Fairfield failed to satisfy its burden.

Finally, we return to the words of the rule: "it is no longer equitable that the judgment . . . should have prospective application." *R.* 4:50–1. In addition to failing to satisfy the changed-circumstances trigger, the argument advanced by Fairfield is an assault on notions of equity and fairness. Fairfield voluntarily entered into the consent judgment to avoid a lengthy and expensive proceeding; to avert a possible declaration of unconstitutionality in respect of *N.J.S.A.* 2C:34–7; and to secure the dismissal of DEG's suit. In exchange, it agreed to allow DEG to operate at a location that otherwise would contravene *N.J.S.A.* 2C:34–7(a), an outcome specifically provided for in *N.J.S.A.* 2C:34–2(b). It further recognized DEG's entitlement to a certificate of nonconforming use in the event of a zoning change. Although DEG performed its part of the bargain, Fairfield unilaterally denied it the promised certificate. The only inequity presented by this case would be to allow Fairfield's planned amendment of its zoning laws to undermine the consent judgment or form the basis for a court-sanctioned collateral attack on it. In sum, whatever standard applies under subsection (e), Fairfield cannot satisfy the "no longer equitable" requirement, and thus the Appellate Division's remand order based on subsection (e) must be vacated.

*Rule* 4:50–1(f)

The Appellate Division did not rule on Fairfield's claim under *Rule* 4:50–1(f) because it viewed that issue as moot by virtue of the relief it had afforded under subsection (e) of the rule. *DEG, supra,* 398 *N.J.Super.* at 75, 939 *A.*2d 261. In light of our rejection of the subsection (e) analysis, we turn briefly to subsection (f).

*Rule* 4:50–1(f), the so-called catch-all, provides relief for "any other reason." "No categorization can be made of the

situations which would warrant redress under subsection (f).... [T]he very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." *Court Inv. Co. v. Perillo*, 48 *N.J.* 334, 341, 225 A.2d 352 (1966) (citation and emphasis omitted).

Fairfield argues that this case presents such exceptional circumstances and thus is governed by our decision in *Manning Engineering, Inc. v. Hudson County Park Commission*, 74 *N.J.* 113, 376 A.2d 1194 (1977). We do not agree.

*Manning Engineering* involved a suit to collect an outstanding balance owed on a public engineering contract. *Id.* at 117–18, 376 A.2d 1194. The trial judge ruled in favor of the plaintiff and the case was appealed through to this Court. *Id.* at 118, 376 A.2d 1194. After we affirmed with modification, the defendant moved to reopen the judgment under *Rule* 4:50–1. *Ibid.* Ultimately, we granted relief under *Rule* 4:50–1(f) because there was substantial evidence that the public officials who entered into the engineering contract did so because of bribes and kickbacks, rendering the contract "a corrupt and illegal agreement." *Id.* at 122–23, 376 A.2d 1194. Indeed, we viewed the enforcement of such a contract as an assault on the integrity of the public contracting process and as providing the "truly exceptional circumstances" contemplated by *Rule* 4:50–1(f). *Ibid.*

Fairfield contends that the consent judgment here was likewise illegal because it allowed DEG to violate the criminal law by operating within the 1,000–foot buffer. That argument is wide of the mark. As we indicated in our discussion of DEG's claim under *Rule* 4:50–1(d), when a municipality invokes *N.J.S.A.* 2C:34–2 it does not permit the "illegal" location of a sexually oriented business, but instead renders that location a legal one. As such, the consent judgment, which the Attorney General permitted, is not illegal but in full conformity with the legislative scheme.

More importantly, there is no hint of public corruption involved in this case nor is there any suggestion by Fairfield that DEG

engaged in deliberate fraud or deceit. This case involves a reasoned decision by municipal officials, acting in good faith, to settle a problem case—no more and no less. As such, it has nothing in common with *Manning Engineering*.

## VI.

We turn at last to the Appellate Division's invalidation of paragraph two of the consent judgment as violative of the MLUL.[7] The definitional section of the MLUL describes the term "nonconforming use" as "a use or activity which was lawful prior to the adoption, revision or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption, revision or amendment." *N.J.S.A.* 40:55D–5. In order to continue a use that was previously conforming but has become nonconforming by reason of a later-enacted zoning ordinance, an interested party must comply with the procedure detailed in *N.J.S.A.* 40:55D–68, which provides:

> Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction thereof.
>
> The prospective purchaser, prospective mortgagee, or any other person interested in any land upon which a nonconforming use or structure exists may apply in writing for the issuance of a certificate certifying that the use or structure existed before the adoption of the ordinance which rendered the use or structure nonconforming. The applicant shall have the burden of proof. Application pursuant hereto may be made to the administrative officer within one year of the adoption of the ordinance which rendered the use or structure nonconforming or at any time to the board of adjustment. The administrative officer shall be entitled to demand and receive for such certificate issued by him a reasonable fee not in excess of those provided in R.S. 54:5–14 and R.S. 54:5–15. The fees collected by the official shall be paid by him to the municipality.

The purpose of that provision, which has constitutional implications, is to protect "pre[-]existing nonconforming uses from changes made in municipal zoning ordinances." *Do–Wop Corp. v.*

---

[7] Notably, that argument was not raised by Fairfield before the Appellate Division.

*City of Rahway*, 168 *N.J.* 191, 198, 773 *A.2d* 706 (2001). The statute expressly protects a vested right by permitting a pre-existing nonconforming use to co-exist with an ordinance that facially prohibits it. William M. Cox et al., *New Jersey Zoning and Land Use Administration* § 11–1.1 at 270 (2008).

The inquiry in connection with a certificate of nonconforming use is a limited one: whether the use predated the zoning ordinance that rendered it illegal and whether it conformed with the zoning laws in effect at its inception. David J. Frizell, 36 *N.J. Practice* § 13.2 at 253 (3d ed. 2005). If it did, it is entitled to protection.[8] *Ibid.;* Cox et al., *supra*, § 11–2.3.

In this case, the trial judge struck down Fairfield's content-based zoning ordinance that prohibited all sexually oriented uses on November 4, 2005, at which point she ordered the issuance of relevant permits. Thereafter, on January 27, 2006, DEG opened its doors to a use that, according to this record, entirely conformed with the zoning scheme in effect in Fairfield.

To be sure, the protection afforded by *N.J.S.A.* 40:55D–68 insulates the pre-existing use only from a new zoning prohibition. It does not immunize the use from the requirements of other state laws and regulations. *Do–Wop, supra*, 168 *N.J.* at 198, 773 *A.2d* 706. Here, *N.J.S.A.* 2C:34–7 remained in effect when DEG's use became conforming under the zoning scheme. That interdiction was the focus of the settlement between Fairfield and DEG. By that settlement, Fairfield elected to invoke the exception provided in *N.J.S.A.* 2C:34–2(b) and overrode the 1,000–foot buffer requirement in *N.J.S.A.* 2C:34–7(a). At that point, DEG's use was legal

---

[8] Our decision in *Paruszewski v. Township of Elsinboro*, 154 *N.J.* 45, 711 *A.2d* 273 (1998), should not be interpreted otherwise. There the issue was whether the township had standing to challenge an application under *N.J.S.A.* 40:55D–68 where the prior use had been sporadic. *Id.* at 48, 711 *A.2d* 273. Despite some equivocal language, when that opinion is read in light of the facts presented, it stands only for the proposition that a municipality may challenge an applicant's qualification for nonconforming use status. *Id.* at 51, 711 *A.2d* 273. As noted above, if the applicant qualifies, the certificate issues as a matter of right.

under state law and was immunized from a later invalidating zoning ordinance, because it predated the ordinance that rendered it illegal, and conformed with the zoning laws in effect at its inception.

The Appellate Division, however, was troubled that Fairfield did not enact an ordinance to memorialize its override of the buffer. According to the panel, *N.J.S.A.* 2C:34–2(b) provides a single escape route from *N.J.S.A.* 2C:34–7 that Fairfield failed to satisfy:

Notwithstanding the general prohibition of *N.J.S.A.* 2C:34–7 against the location of sexually[ ]oriented businesses within 1,000 feet of a school, church or other use specified in this statute, the Legislature has authorized municipalities to permit exceptions. However, a municipality may grant such permission only by adoption of an amendment to its zoning ordinance.

[*DEG, supra,* 398 *N.J.Super.* at 76, 939 *A.*2d 261.]

We disagree.

This settlement falls within the broad power afforded to municipalities to create entirely new zones in which sexually oriented businesses may operate without regard to the 1,000–foot buffer. The language of *N.J.S.A.* 2C:34–2 regarding the adoption of a zoning ordinance is, in our view, merely reflective of the fact that under the MLUL, a municipality must enact an ordinance if it chooses to rezone, no more and no less. *See N.J.S.A.* 40:55D–62. But the consent judgment, by its very terms, was not intended to rezone the area in which DEG was located but only to settle DEG's statutory claim and acknowledge its prior nonconforming status under the zoning laws so that, if DEG ever abandoned or otherwise terminated the use, the premises would lose its protection.

In short, we do not discern in the language of *N.J.S.A.* 2C:34–2(b) a preclusion of the procedure contained in the consent judgment, which we view as fully effectuating the intent of the Legislature to save the statute in the face of a substantial constitutional challenge.

## VII.

The judgment of the Appellate Division is reversed; the judgment of the trial court is reinstated.

*For reversal and reinstatement*—Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO, and HOENS–6.

*Opposed*—None.