**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4421-17T1

TERESA PEREZ,
f/k/a TERESA TAPANES,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

JUAN C. TAPANES,

    Defendant-Appellant/
    Cross-Respondent.

_____

Argued May 8, 2019 - Decided May 23, 2019

Before Judges Nugent and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0610-93.

Stuart J. Moskovitz argued the cause for appellant/cross-respondent.

Lindsay A. Heller argued the cause for respondent/cross-appellant (Fox Rothschild LLP, attorneys; Lindsay A. Heller, of counsel and on the briefs; Jessica C. Diamond, on the briefs).

PER CURIAM

Defendant Juan C. Tapanes appeals from an April 25, 2018 order which denied the motion he filed under Rule 4:50-2 for review from a Qualified Domestic Relations Order (QDRO) that divided the marital portion of his pension. Plaintiff Teresa Perez cross-appeals from the denial of her request for counsel fees. Finding no abuse of discretion in either decision, we affirm.

We take the following facts from the record. The parties were married for sixteen and one-half years at the time of their divorce in 1993. They entered into a settlement agreement, which among other things, divided defendant's pension by way of QDRO. The agreement stated:

> The parties acknowledge that an evaluation is presently being conducted of defendant's pension and agree that plaintiff will be entitled to [fifty percent] of the value of defendant's pension from the date of the marriage to the date of the filing of the [d]ivorce [c]omplaint in this matter. The parties further acknowledge that a lump sum payment will not be made to plaintiff in accordance with the [r]ules and [r]egulations of the [p]ension [p]lan. However, in the event of defendant's death or his separation from the [p]ension [p]lan and except for defendant's early retirement, defendant is entitled to receive a lump sum payment equal to his contributions to the [p]ension [p]lan, in which case, plaintiff will be entitled to receive her share of the value of the pension in accordance with the evaluation conducted at the time of the divorce, and not [fifty percent] of defendant's contributions.

In 2010, defendant retired and began drawing on the pension without informing plaintiff and without the entry of a QDRO. Defendant later relocated to Florida. In September 2017, plaintiff contacted and spoke with defendant by telephone and also emailed him regarding the preparation of a QDRO. A week after her first email, plaintiff sent defendant another email confirming she had retained an expert to prepare the QDRO. On September 19, 2017, the expert sent both parties a draft QDRO. In pertinent part, the QDRO adhered to the terms of the parties' settlement by allotting plaintiff one-half of the marital coverture portion of the pension. It also stated plaintiff would receive twenty-five percent of defendant's portion of the pension benefit to satisfy the arrears that had accumulated as a result of his receipt of the full pension draw prior to the QDRO.

Plaintiff followed up regarding the QDRO with another email to defendant, but he did not respond. Therefore, she telephoned defendant and left him a voice message advising she would file a motion for entry of the QDRO. Defendant did not respond.

On October 2, 2017, plaintiff filed her motion and served defendant via first-class mail and certified mail. On October 25, 2018, at the motion judge's direction, plaintiff served defendant again in a similar fashion. On November

3

3, 2017, the motion judge entered an order granting plaintiff's motion to enforce the parties' settlement agreement and compelling defendant to sign the QDRO. Specifically, the order memorialized the judge's findings that defendant had been served with plaintiff's motion and failed to file an opposition. The court served defendant with its order and plaintiff also emailed him a copy.

On November 16, 2017, plaintiff served defendant by email and certified mail with a letter she sent to the motion judge advising that defendant had failed to comply with the November 3 order. The motion judge entered the QDRO on November 16. The same day, an attorney corresponded with plaintiff on behalf of defendant. Notably, counsel's letter stated:

> I know that you did not receive a prompt response to your original inquiries, but my client was under the impression that all of these issues had been taken care of by you or your attorney at or shortly after the time of the divorce.
>
> The QDRO you sent appears to be appropriate, however my client would like to see actual numbers, and not just percentages, before he executes the [QDRO].

Defendant retained new counsel who corresponded with plaintiff on December 1, 2017, and in pertinent part, stated:

> I have had the opportunity to review the [d]ual [j]udgment of [d]ivorce, your [n]otice of [m]otion and the subsequent [o]rders by [the motion judge]. In

4

reviewing same I believe the issue of arrears and the repayment of same needs to be rectified. My goal is to avoid having to file any subsequent [m]otion for [r]econsideration with the [c]ourt to resolve this matter[.]

In January 2018, the plan administrator corresponded with the parties confirming the QDRO had been processed, the amount of arrears, and the parties' respective share of the pension draw. Defendant retained a third attorney and filed a motion in March 2018, to vacate the QDRO. He claimed the parties' settlement contained an "anti-Marx"[1] formula because the parties did not intend to divide the marital coverture portion of the pension. Instead, he argued plaintiff was to receive a lump sum amount equivalent to one-half of defendant's contributions to the pension plan during the marriage. Defendant also claimed Hurricane Irma prevented him from responding to plaintiff's motion. Plaintiff filed a cross-motion for counsel fees.

A second motion judge heard the motions and denied both. Regarding defendant's motion, the judge found he had notice of the proceedings by telephone, email, letter, and voice message, and his claim the hurricane prevented him from responding to plaintiff's communications and motion was a

---

[1] Marx v. Marx, 265 N.J. Super. 418 (Ch. Div. 1993).

"red herring."  The judge concluded the parties were in communication after "Hurricane Irma had already occurred."

The judge noted neither of the attorneys defendant retained to correspond with plaintiff raised the hurricane as an impediment to defendant's ability to respond to the communications and motion regarding the QDRO, or comply with the court's order to sign the QDRO.  The judge noted the attorneys' correspondence did not object to the coverture formula, but rather the arrearage component of the QDRO.  Importantly, the motion judge further noted defendant neither sought reconsideration of nor appealed from either the November 3 order or the November 16, 2017 QDRO.  The judge concluded

> I do not find that [Rule] 4:50-1 is applicable in this matter.
>
> . . . [H]ere what we're talking about is a party who was well aware of the proceedings before [the first motion judge].  And for whatever reason decided not to avail himself initially of the notice he received and come to [c]ourt to challenge what [plaintiff] wanted.

The judge signed the April 25, 2018 order, denying the motion and cross-motion, and issued a written supplemental decision with reasons for the counsel fee denial.  This appeal followed.

6

I.

> [F]indings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). . . .
>
> If the trial court's conclusions are supported by the evidence, we are inclined to accept them. Id. at 412. We do "not disturb the 'factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark'" should we interfere to "ensure that there is not a denial of justice." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)).
>
> [Gnall v. Gnall, 222 N.J. 414, 428 (2015).]

On appeal, defendant repeats the arguments he made to the motion judge, namely, 1) the QDRO is contrary to the terms of the settlement agreement because the agreement contained an anti-Marx provision and plaintiff was only entitled to a lump sum distribution of $3903.21; 2) the first motion judge unilaterally entered the QDRO without defendant's input, and plaintiff engineered the result while defendant was unable to respond due to Hurricane

A-4421-17T1

Irma; and 3) there were grounds to grant his motion under Rule 4:50-1(a), (b), and (f), and the court made no findings as to why it denied the relief.

On her cross-appeal, plaintiff asserts the motion judge should have granted her counsel fees for defending defendant's motion. She asserts the judge made no findings on the issue of counsel fees, and the supplemental findings were in response to the cross-appeal and not a valid amplification pursuant to Rule 2:5-1(b).

II.

The Supreme Court has stated:

> A motion under Rule 4:50-1 is addressed to the sound discretion of the trial court, which should be guided by equitable principles in determining whether relief should be granted or denied. The decision granting or denying an application to open a judgment will be left undisturbed unless it represents a clear abuse of discretion.
>
> [Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994) (citations omitted).]

"Courts should use Rule 4:50-1 sparingly, [and] in exceptional situations[.]" Id. at 289.

"The kind of mistake contemplated by [Rule 4:50-1(a)] has been described as one which the parties could not have protected themselves from during the litigation." Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1.1 on R. 4:50-

1 (2018); citing DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 263 (2009).

Therefore, "neither the court's nor an attorney's error as to the law or the remedy constitutes mistake under this section." Pressler & Verniero, cmt. 5.1.1 on R. 4:50-1 (citing Wausau Ins. v. Prudential Prop. Ins., 312 N.J. Super. 516, 518-19 (App. Div. 1998)).

> To obtain relief from a judgment based on newly discovered evidence, the party seeking relief must demonstrate "that the evidence would probably have changed the result, that it was unobtainable by the exercise of due diligence for use at the trial, and that the evidence was not merely cumulative." All three requirements must be met. Moreover, "newly discovered evidence" does not include an attempt to remedy a belated realization of the inaccuracy of an adversary's proofs.
>
> [DEG, LLC, 198 N.J. at 264 (citations omitted).]

And Rule 4:50-1(f) grants relief from a judgment only in "exceptional situations." Id. at 270 (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)).

Having considered defendant's arguments, we are convinced the motion judge did not abuse her discretion. Indeed, defendant never appealed or sought reconsideration of the QDRO itself or the order compelling him to sign it. The record demonstrates defendant had proper notice of plaintiff's applications to the court, knew the court had granted plaintiff's motions, and only then objected to

the arrears-related aspect of the QDRO—not the issues raised to the second motion judge or here on appeal. Thus, the record bears no evidence of mistake, or grounds to grant relief due to newly discovered evidence or exceptional circumstances.

Additionally, we are unpersuaded there were grounds for relief from the QDRO based upon defendant's theory the settlement agreement contained anti-Marx language. Our Supreme Court recently stated:

> "[A]n agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citations omitted). According to those principles, we must "discern and implement the common intention of the parties." Ibid. Therefore, our role when interpreting marital settlement agreements is to "consider what is 'written in the context of the circumstances' at the time of drafting and to apply 'a rational meaning in keeping with the expressed general purpose.'" Sachau v. Sachau, 206 N.J. 1, 5-6 (2011) (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)). In doing so, "the words of an agreement are given their 'ordinary' meaning." Flanigan v. Munson, 175 N.J. 597, 606 (2003) (quoting Shadow Lake Vill. Condo. Ass'n v. Zampella, 238 N.J. Super. 132, 139 (App. Div. 1990)). Therefore, where the parties' intent "is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn, 225 N.J. at 45.
>
> [Woytas v. Greenwood Tree Experts, Inc., ___ N.J. ___, ___ (2019) (slip op. at 12-13).]

The QDRO fulfilled the terms of the parties' settlement agreement, whose plain language required an equitable distribution of the value of the marital portion of the pension. The <u>Marx</u> marital coverture formula effectuates a division of the value of a pension. <u>Panetta v. Panetta</u>, 370 N.J. Super. 486, 494-95 (App. Div. 2004). The settlement agreement did not eschew a <u>Marx</u> formula.

Moreover, other than a self-serving certification authored by his former divorce attorney, defendant provided the motion judge no objective evidence, valuation, or rationale to support his argument why plaintiff should only receive $3903.21 as her share of equitable distribution from the asset. The settlement agreement's mention of a lump sum distribution pertained only to defendant in the event he died or separated from the plan. Therefore, notwithstanding defendant's failure to object to the entry of the QDRO, the record does not support his tortured interpretation of the settlement agreement regarding the pension division.

## III.

Finally, "[a]n allowance for counsel fees and costs in a family action is discretionary." <u>Eaton v. Grau</u>, 368 N.J. Super. 215, 225 (App. Div. 2004) (citing <u>R.</u> 4:42-9(a)(1)). Having considered the arguments raised on the cross-appeal,

11

we are convinced the decision to deny plaintiff counsel fees was not an abuse of discretion and affirm for the reasons expressed in the motion judge's decision.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION