**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0626-19T1

LISA ALLEN,

    Plaintiff-Appellant,

v.

QUALCARE ALLIANCE
NETWORKS, INC., CIGNA
HEALTH AND LIFE
INSURANCE COMPANY, and
EDWARD DAVIS,

    Defendants-Respondents.

_____

> Submitted May 20, 2020 – Decided June 22, 2020
>
> Before Judges Koblitz, Gooden Brown and Mawla.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0527-17.
>
> Hegge & Confusione, LLC, attorneys for appellant (Michael James Confusione, of counsel and on the briefs).
>
> Littler Mendelson, PC, attorneys for respondents (Jennifer Ivy Fischer, Amber M. Spataro and Matthew

J. Hank of the Pennsylvania bar, admitted pro hac vice, on the brief).

PER CURIAM

Plaintiff Lisa Allen appeals from an August 2, 2019 Law Division order entered following a plenary hearing, and a September 27, 2019 order denying reconsideration of the August 2 order. Both orders effectively denied plaintiff's request to vacate a settlement and reinstate her wrongful termination complaint against her employer QualCare Alliance Networks, Inc. (QualCare), QualCare's parent company, Cigna Health and Life Insurance Company (Cigna), and Edward Davis, a QualCare employee (collectively, defendants). We affirm.

On February 10, 2017, plaintiff filed a complaint against defendants alleging violations of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -49; common law wrongful discharge; and breach of the covenant of good faith and fair dealing. The complaint designated Glenn Montgomery as plaintiff's trial counsel, and alleged that plaintiff "was systematically harassed and wrongfully terminated for filing . . . complaints regarding, inter alia, nepotism practices, an inappropriate romantic and/or sexual relationship between . . . Davis and a female co-employee[,] and inappropriate sexual harassing conduct against [p]laintiff by . . . Davis." Plaintiff sought compensatory, general, and punitive damages.

Following the completion of discovery, Cigna and QualCare moved for summary judgment on September 28, 2018, and trial was scheduled for January 28, 2019. The judge conducted oral argument on the motion on October 26, 2018, and reserved decision to allow the parties to discuss a settlement. Between October 29 and November 5, 2018, the parties engaged in settlement negotiations as evidenced by a series of telephone and email exchanges. Beginning on October 29, Montgomery's associate notified plaintiff by email that defendants made an offer of $25,000. He inquired whether plaintiff would "be able to talk tomorrow around 11:00 [a.m.]?"

In an email dated October 31, captioned "Allen/Cigna Settlement Negotiations," Montgomery's associate wrote:

> Dear Ms. Allen:
>
> Please allow this correspondence to confirm that you have authorized this office to make a counter-demand of [$95,000] to the offer of [$37,500] made on behalf of the defendants.
>
> We will be in touch as soon as we relay your counter-demand to defendants' counsel and the response to same.

At 10:44 a.m. on Friday, November 2, Montgomery's associate informed plaintiff by email to "call us ASAP to continue negotiations." At 11:12 a.m., the associate sent plaintiff the following email:

3

Please contact us IMMEDIATELY . . . . As advised on my telephone message, a counter-offer has been made, but we need to respond ASAP so that defendants do not withdraw from negotiations completely. We are advised that we must get back to them TODAY with a counter-demand. Again, please call us ASAP.

On Saturday, November 3, the associate notified plaintiff

[t]he defendants have made a counter-offer of $80,000, to the authorized demand of $90,000. Please review the attached proposed settlement agreement.

Please also contact [Montgomery] on his cell phone TODAY to discuss the counter-offer. Again, the judge will be making his decision on the [summary judgment] motion on Monday.

On Sunday, November 4, defense counsel sent Montgomery a revised settlement agreement for $90,000, and stated defendants would be willing to pay one-third of the amount on an IRS W-2 form[1] "for settlement of any and all claims, asserted and unasserted, by [plaintiff] for lost wages," and the remaining two-thirds on a 1099-MISC form,[2] "representing consideration for settlement of

---

[1] "[T]he IRS W-2 form is normally issued by an employer to an employee," documenting "[t]he withholding of taxes . . . consistent with an employer-employee relationship." Poppe v. Taxation Div. Director, 6 N.J. Tax 108, 114 (Tax 1983).

[2] The IRS 1099-MISC form is used for reporting income to independent contractors and is "not subject to standard payroll deductions." Cavalieri v. Bd. of Trs. of Pub. Emps. Ret. Sys., 368 N.J. Super. 527, 534 (App. Div. 2004).

any and all non-wage claims, asserted and unasserted, including without limitation claims for emotional distress and reputational harm." However, defense counsel noted "[t]his is as far as we can go."

At 2:32 p.m. that day, Montgomery left the following voicemail for plaintiff:

> Listen, I've been talking with [defense counsel] and they're willing to go to [ninety] with one-third only of your net on a W-2 and the rest of your net on a 1099, so you get all the money, as opposed to being taxed on it. So you'll only be taxed on a third of your total net. So I told them go ahead and settle the case. All right? . . . . Just call me back to confirm you got this.

At 9:44 a.m. the following morning, Monday, November 5, Montgomery's associate sent plaintiff an email to "contact [Montgomery] IMMEDIATELY as the [c]ourt is about to render its decision." Later that day, at 12:08 p.m., Montgomery emailed defense counsel "offer accepted," and at 2:18 p.m., submitted a letter to the judge stating:

> As indicated by the parties during the recent conversation with Your Honor's clerk, this matter has been amicably resolved. The [c]omplaint shall hereby be dismissed with prejudice. It is also respectfully requested that . . . defendants' motion for summary judgment, as well as any other pending motion, be withdrawn as moot.

5

The following day, November 6, Montgomery sent plaintiff "the settlement agreement, general release, and confidentiality agreement" and asked plaintiff to execute, date, and return it to him. Thereafter, on November 12, Montgomery sent plaintiff "tax documents to be completed per the settlement agreement" and explained that after counsel fees and costs, plaintiff would receive $18,218.99 on the W-2 and $36,990.10 on the 1099-MISC.

On December 5, 2018, the judge entered an "order of dismissal/disposition," indicating that the matter was "settled . . . per [the] letter from plaintiff's attorney," and noting that the matter was "[s]ettled after [the trial date] but before trial [and] without aid of [the c]ourt." See Jennings v. Reed, 381 N.J. Super. 217, 228-29 (App. Div. 2005) (explaining that placing the terms of a settlement agreement on the record "is not a procedural requisite to either its validity or enforcement" and "[t]here is no legal requirement that there be court approval" of the agreement); Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983) ("That the agreement to settle was orally made is of no consequence, and the failure to do no more than . . . inform the court of settlement and have the clerk mark the case settled has no effect on the validity of a compromise disposition.").

A-0626-19T1

Ultimately, plaintiff refused to execute the settlement agreement. Several months later, on May 15, 2019, Montgomery sent a letter to the judge requesting a conference and stating that "[s]ignificant issues have arisen regarding the . . . case." After the judge denied the request, on May 23, 2019, Montgomery filed a motion to be relieved as counsel, which the judge also denied following a June 21, 2019 hearing. At the hearing, the judge explained that Montgomery's motion was "moot because the case [was] closed," and rejected plaintiff's attempt to argue the merits of her case without filing a motion to reinstate the complaint.

On June 25, 2019, Montgomery moved for reconsideration of the June 21 order, as well as reinstatement of plaintiff's complaint pursuant to Rule 4:50-1. On July 29, 2019, the judge conducted a plenary hearing, after which the judge denied both motions in an August 2, 2019 order. In the written statement of reasons accompanying the order, the judge summarized the testimony at the plenary hearing as follows:

> [Plaintiff] testified that [her] counsel settled and dismissed her case without her approval. [Plaintiff's] position was that her counsel . . . was merely to be engaged in settlement negotiations. Subsequently, a disagreement between plaintiff and [Montgomery] arose after the case settled as to the tax structure of the settlement.[3] Plaintiff alleges that [Montgomery]

---

[3] At the hearing, plaintiff admitted agreeing to "[t]he number" but testified "[t]he number was only agreed to if the tax structure . . . [could] happen."

informed her that he would ask defendant's counsel for additional money as part of the settlement. [Plaintiff] further contends that [her] counsel . . . was aware of "new discovery" prior to the settlement that would have helped her case. [Plaintiff] further argues that her retainer agreement states that only the plaintiff, and not her attorney, can settle the case and that plaintiff's counsel violated the retainer agreement by settling the matter without her permission.

[Montgomery] admits that at approximately 12:08 [p.m.] on November 5, 2018[,] he sent an email letter to defendant's counsel that their settlement offer was accepted – [one-third] of settlement on a W2 and the remaining [two-third] on a 1099. At 2:18 [p.m.] on November 5, 2018, . . . Montgomery sent a letter to the court advising that the case was settled. . . . Montgomery further represented that on or about November 3, 2018, he had discussed with plaintiff taking the settlement offer or proceeding with the summary judgment motion. Subsequently, . . . Montgomery stated that plaintiff agreed to take the settlement amount. . . . Montgomery set forth that following the communications [in which] plaintiff accepted a settlement offer, a dispute between him and plaintiff arose regarding the tax consequences . . . based on the tax apportionment of the settlement offer.

In making credibility findings, the judge "found [Montgomery's] testimony to be credible." According to the judge, "Montgomery easily recalled the dates that events leading up to the finalization of the settlement agreement occurred." Montgomery even represented to the court "that after the dispute as to the amount arose out of the tax structure contained within the settlement, he

asked defendant Qualcare for more money and that defendant would not pay any more money." Further, Montgomery "cited to email[s] and letters . . . to support his representations on the record of the settlement agreement."

On the other hand, the judge found plaintiff's "testimony to be less credible." According to the judge,

> [plaintiff] has an obvious bias and interest in seeing her case reinstated. [Plaintiff] was clearly upset at the plenary hearing which clouded her ability to objectively recall the substantive conversations with her attorney prior to the settlement being finalized. . . . [Plaintiff] kept referring to "new discovery" during the plenary hearing however she failed to provide specifics as to the "new discovery" that [Montgomery] was allegedly aware of. [Plaintiff] additionally waited approximately seven . . . months following the filing of the order of dismissal to bring this motion (through her counsel) in order to attempt to reopen her case.
>
> Moreover, this [c]ourt found her testimony to be biased by the fact that she frequently referred to herself as the "little person" throughout the hearing to attempt to demonstrate how she feels she has been prejudiced throughout the hearing. [Plaintiff] consistently referred to her attorney as well as defendants and their representatives as being the "big people" against her. [Plaintiff] made reference to how defendant Cigna (Qualcare) was "getting a good bargain probably with this settlement." . . . She represented to the [c]ourt that if the [c]ourt failed to reinstate her complaint, she would be even further prejudiced because she would be forced to appeal the [c]ourt's decision which would be adverse to her.

9

Applying the applicable subsections of <u>Rule</u> 4:50-1, the judge concluded plaintiff "failed to meet her burden" to justify "reinstat[ing her] complaint and vacat[ing] the December 5, 2018 order." The judge acknowledged the "dispute between plaintiff and [her] counsel as to whether plaintiff agreed to settle this case," but found that because the dispute was "between plaintiff . . . and her counsel," and not "between plaintiff and the defendants," it was an "insufficient" basis to "warrant vacating the [dismissal] order."

The judge accepted defense counsel's argument that defendants "had no reason to doubt whether plaintiff's counsel had apparent authority to settle the matter," as Montgomery had been representing plaintiff since the inception of the case. Thus, according to the judge, "reinstating the complaint" eight months after it was dismissed would "prejudice[]" defendants by "requir[ing] defendants to resume their defense and re-litigate a matter that defendants reasonably believed was marked settled." Conversely, plaintiff would not be "prejudiced by the [c]ourt's decision" as "there [were] several avenues that plaintiff [could] take if she [felt] that her attorney wrongfully settled the present matter without her authority."

Additionally, the judge rejected plaintiff's argument that the claimed "new evidence" she presented to her attorney "following the summary judgment but

before the alleged settlement date of November 5, 2018 [was] sufficient to justify re-opening plaintiff's case."  The judge explained:

> The discovery period ended on September 23, 2018. Any evidence that plaintiff possessed prior to the conclusion of the discovery period and was not turned over to the defendants prior to the discovery end date would be barred.  Moreover, even if the discovery was only brought to light subsequent to the expiry of the discovery period, plaintiff never filed a motion to reopen discovery prior to [the] case being marked as settled.  Plaintiff has failed to describe what the "new evidence" is, merely referring generally to the fact that she presented "new evidence."  If the new evidence is the voicemail left by plaintiff's counsel to plaintiff on or about November 4, 2018, which was played at the July 29, 2019 plenary hearing, this [c]ourt finds that the voicemail message lends credence to plaintiff's counsel's version of the events that he was able to negotiate the [one-third] W2, [two-third] 1099 settlement as he had previously discussed with the plaintiff.

Armed with new counsel, on August 22, 2019, plaintiff moved for reconsideration of the August 2 order pursuant to Rule 4:49-2, to which defendants objected.  In a supporting certification, plaintiff reiterated that she had not authorized Montgomery to accept the settlement agreement on her behalf and provided emails and letters sent between January and May 2019 in support.  On September 27, 2019, the judge denied plaintiff's motion.  In an accompanying written statement of reasons, citing Cummings v. Bahr, 295 N.J.

Super. 374, 384 (App. Div. 1996), the judge found that plaintiff "failed to meet the high threshold required for reconsideration,"[4] and "failed to show where th[e c]ourt acted in an 'arbitrary, capricious or unreasonable manner' . . . or where th[e] court 'either did not consider or failed to appreciate the significance of probative competent evidence.'"  According to the judge, plaintiff's arguments were "either re-arguments of those already presented to and considered by the [c]ourt or arguments that plaintiff could reasonably have made at the July 29, 2019 hearing."

The judge explained that he had not erred in applying Rule 4:50-1 when considering plaintiff's initial motion because "[t]he December 5, 2018 order [was] a final order," that "resolve[d] all claims and controversies in this matter as to all parties."  Additionally, relying on Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010), the judge determined that "the evidence that plaintiff [was] presenting for the first time on [her] reconsideration motion [was] not properly before the [c]ourt" because the evidence "predate[d] the July 29, 2019 . . . hearing" and thus "could reasonably have been presented" at the hearing.

_____

[4] The judge acknowledged that "plaintiff largely appeared to be representing herself at the July 29, 2019 . . . hearing considering the contentious relationship between plaintiff and her former counsel."  However, the judge stated "this fact in and of itself is insufficient to relax the stringent case law and standards pertaining to reconsideration that is binding on th[e c]ourt."

Nonetheless, the new evidence did "not change th[e] [c]ourt's previous finding that the present dispute is one between plaintiff and her former counsel, . . . rather than a dispute between plaintiff and the defendants warranting reinstatement of the present matter."

On appeal, plaintiff argues the judge "misapplied New Jersey law in finding that there was apparent authority binding plaintiff to the settlement," and "misapplied New Jersey law in applying the [Rule] 4:50 standard to plaintiff's motion to reinstate her case" as "[t]here was no final judgment or order within the meaning of [Rule] 4:50." We disagree.

Rule 4:50-1 provides that

> the court may relieve a party . . . from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under [Rule] 4:49; (c) fraud . . . , misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

Rule 4:50-1 applies to final orders and judgments, and "does not distinguish between consent judgments and those issued after trial. So long as the judgment is final, the rule is applicable." DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 261 (2009). "[A]n order is considered final if it disposes of all issues as to all parties." Silviera-Francisco v. Bd. of Educ. of City of Elizabeth, 224 N.J. 126, 136 (2016). "Significantly, Rule 4:50-1 is not an opportunity for parties to a consent judgment to change their minds; nor is it a pathway to reopen litigation because a party either views his [or her] settlement as less advantageous than it had previously appeared, or rethinks the effectiveness of his [or her] original legal strategy." DEG, 198 N.J. at 261. "Rather, the rule is a carefully crafted vehicle intended to underscore the need for repose while achieving a just result." Ibid. Thus, the rule "denominates with specificity the narrow band of triggering events that will warrant relief from judgment if justice is to be served" and "[o]nly the existence of one of those triggers will allow a party to challenge the substance of the judgment." Id. at 261-62.[5]

---

[5] Subsection (a) of Rule 4:50-1 "encompass[es] situations in which a party, through no fault of its own, has engaged in erroneous conduct or reached a mistaken judgment on a material point at issue in the litigation." DEG, 198 N.J. at 262. This subsection "is intended to provide relief from litigation errors 'that a party could not have protected against,'" id. at 263 (quoting Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)), and "an attorney's

Although courts are empowered under <u>Rule</u> 4:50-1 "to confer absolution" from judgments and orders, <u>DEG</u>, 198 N.J. at 261, relief "is granted sparingly." <u>F.B. v. A.L.G.</u>, 176 N.J. 201, 207 (2003) (citing Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1.1 on <u>R.</u> 4:50-1 (2003)). "On appellate review, the trial judge's determination 'will be left undisturbed unless it represents a clear abuse of discretion.'" <u>DEG</u>, 198 N.J. at 261 (quoting <u>Little</u>, 135 N.J. at 283). "'[A]buse of discretion' . . . arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible

---

error of law is not sufficient to relieve a party from a final judgment or order." <u>Ibid.</u> (quoting <u>Posta v. Chung-Loy</u>, 306 N.J. Super. 182, 206 (App. Div. 1997)). Subsection (b) allows a party to "obtain relief from a judgment based on newly discovered evidence," if the party seeking relief can demonstrate that the evidence (1) "would probably have changed the result," (2) "was unobtainable by the exercise of due diligence for use at the trial," and (3) "was not merely cumulative." <u>DEG</u>, 198 N.J. at 264. Subsection (c) allows a judgment to be set aside when an adverse party engaged in fraud, misrepresentation, or misconduct and that falsity could not have been discovered by reasonable diligence. <u>Gilgallon v. Bond</u>, 279 N.J. Super. 265, 274 (App. Div. 1995). Subsection (e) "is rooted in changed circumstances that call the fairness of the judgment into question." <u>DEG</u>, 198 N.J. at 265-66. Subsection (f) is the "so-called catch-all" that provides relief in "exceptional situations" that "warrant redress" but are not otherwise listed in <u>Rule</u> 4:50-1. <u>DEG</u>, 198 N.J. at 269-70. To obtain relief under Subsection (f), a movant must show that the enforcement of the order "would be unjust, oppressive or inequitable." <u>Greenberg v. Owens</u>, 31 N.J. 402, 411 (1960) (Jacobs, J., dissenting) (citation omitted). The boundaries under this subsection "are as expansive as the need to achieve equity and justice." <u>Hous. Auth. of Morristown v. Little</u>, 135 N.J. 274, 290 (1994) (quoting <u>Palko v. Palko</u>, 73 N.J. 395, 398 (1977)).

15

basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting

Achacoso-Sanchez v. Immigration and Naturalization Service, 779 F.2d 1260,

1265 (7th Cir.1985)). "The discretion afforded to a trial court under the Rule

also includes the duty to consider evidence in the record that militates against

the grant of relief." Little, 135 N.J. at 290.

In denying plaintiff relief under Rule 4:50-1, the judge considered the

applicability of the doctrine of apparent authority. "[A]n attorney for a private

party may settle a lawsuit based on actual or apparent authority to do so."

Seacoast Realty Co. v. W. Long Branch Borough, 14 N.J. Tax 197, 202-03 (Tax

1994). Apparent authority arises when "the client's voluntary act has placed the

attorney in a situation wherein a person of ordinary prudence would be justified

in presuming that the attorney has authority to enter into a settlement, not just

negotiations, on behalf of the client." Amatuzzo v. Kozmiuk, 305 N.J. Super.

469, 475 (App. Div. 1997).

> Thus, in private litigation, where the client by words or conduct communicated to the adverse attorney, engenders a reasonable belief that the attorney possesses authority to conclude a settlement, the settlement may be enforced. However, the attorney's words or acts alone are insufficient to cloak the attorney with apparent authority.
>
> [Id. at 475-76.]

A-0626-19T1

See also LoBiondo v. O'Callaghan, 357 N.J. Super. 488, 497 (App. Div. 2003) (stating that creation of apparent authority is based on "the actions of the principal, not the alleged agent."). Nonetheless, the client bears a heavy burden of overcoming the presumption that his or her attorney is presumed to possess the authority to act on his or her behalf, Jennings, 381 N.J. Super. at 231, and the fact-finder must consider the totality of the circumstances to determine whether apparent authority exists. N.J. Lawyer's Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220 (2010).

Here, plaintiff essentially urges us to reweigh the evidence considered by the judge at the plenary hearing in concluding that Montgomery had apparent authority to finalize the settlement based on plaintiff's actions. However, we shall not disturb the judge's factual findings, as we are not "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974) (citation omitted); see also Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011).

Likewise, we discern no error of law, which we review de novo, Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995), in the judge's conclusion that the settlement was consummated and became

A-0626-19T1

enforceable on November 5, 2018, when Montgomery accepted defendants' offer, despite the fact that plaintiff later refused to execute a written settlement agreement.  See Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993) ("Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges."); Jennings, 381 N.J. Super. at 229 ("Execution of a release is a mere formality, not essential to formation of the contract of settlement.").  Similarly, we perceive no abuse of discretion in the judge's determination that none of the triggering events denominated under Rule 4:50-1 justified relief from the December 5, 2018 order dismissing plaintiff's complaint with prejudice.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION