**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3722-18T3

DOROTHY THOMAS,

    Plaintiff-Appellant,

v.

DAVID THOMAS,

    Defendant-Respondent.

_____

Argued October 6, 2020 — Decided October 19, 2020

Before Judges Yannotti, Mawla, and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0264-01.

Lauren K. Beaver argued the cause for appellant (Ulrichsen Rosen & Freed LLC, attorneys; Derek M. Freed, of counsel and on the briefs; Lauren K. Beaver, on the briefs).

Jennifer Weisberg Millner argued the cause for respondent (Stark & Stark PC, attorneys; Corrine E. Cooke, of counsel and on the brief; Taylor W. Brownell, on the brief).

PER CURIAM

Plaintiff Dorothy Thomas appeals from a March 18, 2019 order denying her post-judgment motion for relief from the parties' final judgment of divorce. We affirm in part and reverse and remand for further proceedings.

Plaintiff and defendant David Thomas were married for twenty-nine years. Plaintiff filed a complaint for divorce in 2000, and on June 13, 2002, the parties entered into a marital settlement agreement (MSA), which was incorporated into the judgment of divorce. Beginning in 1976 and throughout the marriage, defendant was employed at Mobil (now ExxonMobil). There, he accumulated income in various plans including: a Merrill Lynch ExxonMobil Savings and 401k Plan; a UK-Mobil AVC savings Plan; ExxonMobil Savings Plan; and an ExxonMobil Pension Plan (EMPP).

The MSA named and equally divided each of the savings plans, except the EMPP. The MSA also contained the following language as one of its "General Provisions":

> Except as in this [a]greement otherwise provided, each party shall retain whatever property now belongs to him or her as his or her own property, free and clear of any claims thereto of whatever nature, by either of them against the other; it being understood that all property belonging to either party is now in his or her separate name and/or independent possession.

A-3722-18T3

In a separate section entitled "Disclosure" the MSA provided as follows:

> The [husband] and [wife] acknowledge that they have disclosed to the other all financial information and all assets owned or possessed by the parties, or either of them, and it is acknowledged that this [a]greement is entered into in reliance upon that information to the extent that if there exist other assets not so disclosed, this [a]greement shall not be a bar to distribution of said assets.

In November 2000, defendant's counsel sent a letter to plaintiff's attorney addressing a proposed consent order which plaintiff prepared to place pendente lite restraints on the dissipation of the parties' assets. Regarding the EMPP, defendant's counsel stated he did not object to restraints but noted defendant "has continued to pay into this fund after the [c]omplaint filing date which portion is now[1] subject to equitable distribution." An administrative hold was placed on the EMPP and the parties' settlement discussions regarding the asset was whether defendant would buyout plaintiff's interest or execute a Qualified Domestic Relations Order (QDRO) to divide the asset.

On February 5, 2002, plaintiff's counsel wrote to defendant's attorney stating: "it is my understanding that you will direct [defendant] to obtain a

---

[1] The record is unclear whether defendant's counsel meant to say the post-complaint contributions were "not subject to equitable distribution" as opposed to "now subject to equitable distribution." Regardless of word choice, the letter clearly indicates some portion of the EMPP was subject to equitable distribution.

pension valuation from Exxon Mobil." On May 23, 2002, defendant's counsel forwarded "a comprehensive proposal of settlement" in part stating: "The [EMPP] will be the subject of a [QDRO] designating [plaintiff] as [a]lternate [p]ayee of [fifty percent] of the coverture portion of [defendant's] benefits." On May 28, 2002, defendant's attorney responded to a May 24, 2002 letter from plaintiff's counsel, which is not a part of the appellate record, but appears to have sought a lump sum buyout of plaintiff's portion of the EMPP because defendant's counsel stated:

> I fail to understand the basis of your request for a copy of the . . . [p]ension [r]eport since your last position was that [plaintiff] is not interested in a buy-out of her interest in the [EMPP]. On the contrary, my understanding is that she wishes to proceed via QDRO as an [a]lternative [p]ayee thereby making your request inappropriate.

Plaintiff's counsel responded to the settlement proposal in a June 7, 2002 letter, stating: "As I indicated in my prior proposal, to facilitate the distribution of this asset, the value . . . of the pension shall be calculated and [plaintiff] shall receive a lump sum payment equivalent to [fifty percent] of this value from [defendant's] share of the 401(k) plan." After the divorce was finalized, defendant's counsel wrote to plaintiff's counsel requesting authorization to release the administrative hold, which both attorneys executed on May 12, 2003.

On July 17, 2015, defendant emailed plaintiff stating: "I am thinking more seriously of retirement. . . . Before I can select a retirement date, ExxonMobil's QDRO department requires a waiver signed by you that no claims are being made against my pension." Defendant advised his attorney would be mailing plaintiff the waiver. Defendant's counsel forwarded plaintiff the waiver on August 19, 2015, which stated plaintiff was waiving her interest in the EMPP "for good and valuable consideration[.]" On August 26, 2015, defendant's counsel wrote to plaintiff's counsel enclosing the waiver and stated: "In accordance with the MSA, [defendant] is entitled to retain his interest in the [EMPP]." However, on March 27, 2016, defendant sent plaintiff's counsel an email stating: "As I have not decided when I shall retire I no longer require the waiver at this time."

On July 27, 2017, plaintiff wrote to the ExxonMobil Benefits Service Center referencing defendant's July 17, 2015 email to her and the August 19, 2015 letter from his attorney enclosing the release. She stated:

> On my taking legal advice on the matter, I was advised not to sign this waiver until the following matter detailed below was clarified.
>
> 1. The issue is that there is no plan in the divorce document called "ExxonMobil Pension Plan."
>
> . . . .

A-3722-18T3

2. I have taken legal advice and the position is that if it is a new plan then it is required that ExxonMobil advises me when it was created. If the benefit was earned after the divorce then [defendant] is obviously entitled to retain it and a waiver is appropriate.

On August 15, 2017, ExxonMobil responded enclosing a copy of the signed May 12, 2003 authorization releasing the administrative hold on the EMPP.

On October 29, 2018, plaintiff's counsel wrote to defendant's attorney regarding the EMPP and the waiver defendant had previously requested. The letter stated: "There is no asset that is set forth in the divorce judgment and/or the [MSA] by this name. As such, [plaintiff] properly declined to sign the waiver. [I]f this is an asset that was created post-divorce, [plaintiff] requested production of documentation relative to same to confirm such a fact."

On November 15, 2018, defendant's counsel responded enclosing a copy of the May 2003 release of the administrative hold on the EMPP and stated the asset "was excluded from division as an integral part of the settlement." In a December 4, 2018 letter, plaintiff's counsel responded "that the release of the administrative hold [was] needed to implement the QDRO for the division of the Mobil[] Savings Plan QDRO account. [Plaintiff's divorce attorney] did not waive any right to an equitable distribution of the account, nor could she, as the account was not identified in the MSA." Defendant's counsel responded as

6

follows: "Despite the passage of time, it remains clear that [plaintiff's divorce attorney] knew the status of the account when she released it in 2003. [Defendant] recalls that all assets were disclosed and that the exclusion of his pension from equitable distribution was in consideration for multiple concessions he made to achieve closure."

On January 24, 2019, plaintiff filed a motion seeking relief from the judgment of divorce alleging defendant failed to disclose the EMPP. In the alternative, her motion sought relief from the judgment "as a matter of equity due to the lack of inclusion of [d]efendant's [EMPP], as an asset subject to equitable distribution . . . ." The motion also sought discovery, equitable distribution of the EMPP, to hold defendant in violation of litigant's rights and sanction him, and counsel fees. In addition to recounting the contents of the MSA and the parties' post-judgment communications relating to the EMPP, plaintiff cited the disclosure provision of the MSA and argued the nondisclosure of the asset was not a bar to its future distribution.

Defendant cross-moved requesting the court deny the motion, sanction plaintiff for a frivolous application, and require her to pay his counsel fees. Defendant argued plaintiff was aware of the EMPP "despite the fact it was not specifically listed on either party's Case Information Statement [CIS]." He

argued plaintiff knew of the EMPP because the asset was identified in the correspondence discussing pendente lite restraints on assets in November 2000. Defendant pointed to a February 2001 letter from his attorney enclosing plan statements for the EMPP and an October 2001 letter from plaintiff's attorney discussing discrepancies in the pension information provided and defendant's CIS.

In an effort to explain that he did not withhold information, defendant certified as follows: "Clearly, there was confusion as to the pensions (and correct names of same), as a result of the merger [of the U.K. and U.S. branches of ExxonMobil.]" Defendant described how plaintiff's counsel subpoenaed ExxonMobil for the pension information and then received the information by authorization. He described how during 2002 the parties' counsel discussed whether there would be a buyout or a QDRO of the asset.

Regarding the MSA, defendant certified as follows:

> Although it is true that the MSA does not specifically address the ExxonMobil pension and why it was not included in our MSA, the logical conclusion from the correspondence between counsel was: 1) that it was absolutely disclosed and either; 2) not subject to equitable distribution (exempt) or 3) offset against another asset.

Defendant's certification concluded "[t]herefore, it is likely that the [p]laintiff received approximately $60,000 more in liquid cash assets and securities in exchange for the waiver of her eventual interest in my [EMPP]." Defendant stressed "that it is not up to the [c]ourt today to determine whether the offset/terms set forth in the MSA were or equitable. Rather, the only issue before this [c]ourt is whether I failed to disclose my [EMPP]."

Plaintiff's reply certification argued that even if the EMPP was identified she never waived an interest in it. Referring to her own chart of assets, she disputed defendant's claim that she received a greater equitable distribution and asserted she received 49.92% of the disclosed assets and defendant 50.08%.

At oral argument, plaintiff's counsel asserted the motion had been filed pursuant to Rule 4:50-1(f). Defendant's counsel argued the court should review the motion under Rule 4:50-1(c) because plaintiff alleged defendant failed to disclose the EMPP, which sounded in fraud.

The motion judge made oral findings and concluded plaintiff had not demonstrated grounds for relief under Rule 4:50-1(c) because she presented no clear and convincing evidence of a fraud. He found "the record is replete with correspondence . . . and mention of the [EMPP] . . . . [A]t best there appears to have been a lack of follow through on one or both parties. But the court finds

that there . . . was a disclosure, even though it did not ultimately make it into the MSA."

Addressing Rule 4:50-1(f), the judge noted that Rule 4:50-2 provides that such motions should be made within a reasonable time and stated:

> [W]hen courts apply the discovery rule . . . it's not when the plaintiff found out about it, but when . . . the plaintiff . . . should have known about it. And so even if we were to run the clock from 2015 when [defendant] asked for [plaintiff] to execute a waiver . . . it would not be reasonable for there to be an approximately three-year delay between making the application . . . .

The judge concluded "this record is . . . sufficient for the court to make a finding of reasonableness, and thus, there is no need for a . . . plenary hearing."

The judge denied plaintiff's request for counsel fees and also denied defendant's cross-motion for fees and sanctions. The judge made no specific findings regarding the fees other than plaintiff's motion lacked merit, but was not in bad faith and that "it's not clear that both sides don't have the ability to shoulder their own counsel fees[.]"

We review a decision on a Rule 4:50-1 motion for an abuse of discretion. US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). An abuse of discretion exists "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible

basis.'" Id. at 467-68 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). We also review decisions regarding counsel fees for an abuse of discretion. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). However, if a judge makes a discretionary decision but acts under a misconception of the applicable law or misapplies the law to the facts, we "need not extend deference." Johnson v. Johnson, 320 N.J. Super. 371, 378-79 (App. Div. 1999) (citing State v. Steele, 92 N.J. Super. 498, 507 (App. Div. 1966)).

On appeal, plaintiff argues the judge found her motion was not timely, but did not make adequate factual findings to support the ruling and failed to address plaintiff's requests for equitable relief. Plaintiff asserts her motion was filed within a reasonable time given the exceptional circumstances, namely, that she did not learn the EMPP was a marital asset until November 2018 because it was not identified in the MSA. She contends there were material disputes of fact and the motion judge erroneously denied her request for post-judgment discovery and a plenary hearing. She argues the motion judge denied her request for counsel fees without properly analyzing all of the Rule 5:3-5(c) factors.

At the outset, we agree the record lacks any evidence warranting relief under Rule 4:50-1(c) on account of defendant having engaged in "fraud . . . ,

11

misrepresentation, or other misconduct" as set forth in the Rule. The record shows the EMPP was disclosed and that the methods for its possible division were discussed, yet it was not mentioned in the MSA. Therefore, Rule 4:50-1(f) and plaintiff's invocation of the court's equitable powers properly framed this dispute.

Rule 4:50-1 states: "On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: . . . (f) any other reason justifying relief from the operation of the judgment or order." "No categorization can be made of the situations which would warrant redress under subsection (f). . . . [T]he very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 269-70 (2009) (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)) (alterations in original). Relief under Rule 4:50-1 "is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J. 113, 120 (1977) (citing Hodgson v. Applegate, 31 N.J. 29, 43 (1959)).

Our Supreme Court has stated:

> Marital property settlement agreements "involve far more than economic factors" and must serve the strong public and statutory purpose of ensuring fairness and equity in the dissolution of marriages. Rothman v. Rothman, 65 N.J. 219, 229 (1974); see Peterson v. Peterson, 85 N.J. 638, 644 (1981). Even when a divorce order incorporates agreements reached privately between the parties, such orders can be modified "in light of all the facts" bearing on what is "equitable and fair." Smith v. Smith, 72 N.J. 350, 360 (1977).
>
> [Conforti v. Guliadis, 128 N.J. 318, 323 (1992).]

We have held "[t]he law grants particular leniency to agreements made in the domestic arena, and likewise allows judges greater discretion when interpreting such agreements. See N.J.S.A. 2A:34-23. Such discretion lies in the principle that although marital agreements are contractual in nature, 'contract principles have little place in the law of domestic relations.'" Guglielmo v. Guglielmo, 253 N.J. Super. 531, 541-42 (App. Div. 1992) (citation omitted). Because of the obligation to assure fairness "interspousal separation agreements, enforceable only in equity, remain subject 'to the court's power to exercise continued supervisory control.'" Smith v. Smith, 72 N.J. 350, 358 (1977) (citation omitted). See also Fattore v. Fattore 458 N.J. Super. 75, 88 (App. Div. 2019) (holding in a similar post-judgment context that spouses owe a duty of fairness to one another.).

13

The motion judge misapplied the law when he held plaintiff's motion was barred by the discovery rule. The Supreme Court has stated: "The discovery rule is essentially a rule of equity . . . develop[ed] as a means of mitigating the often harsh and unjust results which flow from a rigid and automatic adherence to a strict rule of law." Lopez v. Swyer, 62 N.J. 267, 273 (1973). By "strict rule of law" the Lopez Court was referring to the statute of limitations, which was inapplicable here. Id. at 274. The relief accorded under Rule 4:50-1(f) is limited only by Rule 4:50-2, which posits the motion be made within a reasonable time.

The motion judge erred by finding, based on this record, that plaintiff failed to file her motion for review under Rule 4:50-1(f) within a reasonable time. We cannot discern from the judge's factual findings the significance, if any, he gave to the fact that: 1) plaintiff was self-represented at the time she received the waiver form from defendant's counsel over thirteen years after the divorce; 2) there were several retirement assets equitably distributed in the MSA; 3) she did not construe the 2003 release of an administrative hold as a waiver of equitable distribution of the EMPP; and 4) defendant rescinded his intent to retire. We remand the matter for reconsideration and issuance of a new decision.

14

In making his decision, the judge should consider: whether plaintiff acted reasonably in waiting until July 2017 to contact ExxonMobil to inquire whether the EMPP was a pension plan that was established post-divorce; whether plaintiff contacted the attorney who represented her in the divorce proceedings to seek clarification as to the EMPP and, if not, whether she acted reasonably in failing to do so; when plaintiff retained counsel to address the issue regarding the EMPP; what steps, if any, did plaintiff take between ExxonMobil's response to her inquiry in August 2017 and October 2018, when her attorney wrote to defendant's counsel to ascertain whether she was entitled to a distribution of the EMPP; and any other issue relevant to whether plaintiff filed her motion within a reasonable time.

If the judge determines plaintiff filed her motion within a reasonable amount of time, he should address the question of whether this case presents an exceptional situation, in which relief from the judgment is necessary to "achieve equity and justice." DEG, LLC, 198 N.J. at 269-70.

We note that, in denying plaintiff's motion, the judge focused exclusively on the timeliness of the motion and did not consider whether enforcement of the judgment would be fair and equitable under the circumstances. On the record presented, it is evident a hearing was necessary to answer this question. Indeed,

the parties disputed the following: the value of the EMPP; whether the MSA addressed the EMPP; and whether plaintiff waived her interest in the EMPP and received a disproportionate share of the equitable distribution in consideration for her share of the asset. Resolution of these disputed issues of material fact is necessary for any determination as to whether relief from the judgment is warranted. On remand, the motion judge should afford the parties the ability to submit additional information on the issues to be addressed at the hearing and a brief period of discovery.

Finally, the transcript reveals the motion judge denied plaintiff counsel fees because her motion was unsuccessful. Because we have remanded the equitable distribution issue, the motion judge should also address the counsel fees requests of the parties as a part of the hearing by analyzing all of the Rule 5:3-5(c) factors.

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3722-18T3